132 580
160 86

EDWIN L. THOMAS, Respondent, *v.* JAMES P. STEWART et al., Impleaded, etc., Appellants.

An architect, who is also employed by the owner as his agent and representative in the erection of a building, has authority to consent to the substitution of material inferior to that called for by the contract.

Where, under a building contract, by which the contract price is to be paid by installments, a demand is made by the contractor for the installment due, and payment is refused, the contractor may lawfully refuse to go on with the contract.

Where, by a building contract, payments are only to be made upon certificates of an architect, the refusal of the architect to give to the contractors a certificate, as required, if based upon an unreasonable requirement, will furnish no protection to the owner.

(Argued March 8, 1892; decided March 22, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 18, 1890, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This was an action for the foreclosure of a mechanic's lien filed under the general act against certain property in the city of Yonkers belonging to the defendant Sahagian. Other lienors, who were joined as defendants, appeared and asserted their claims by answers duly served upon the owner.

By a contract dated September 28, 1888, the firm of Stewart & Edmonds agreed to furnish the materials and do the work required by the carpenter's plans and specifications to erect a four-story brick building for Mr. Sahagian, who agreed to pay therefor the sum of $6,176, in four payments, each to be made on the certificate of the architect, the first of $1,500, when the building was enclosed and the roof on ; the second of like amount when the floors were laid, " partitions set and ready for mason ; " the third of $1,600, when the windows were in " and standing trim   *   *   *   on," and the fourth of $1,576, when the contract was completed and the building accepted. The first payment was made without objection and the refusal of the owner to make the second resulted in a refusal of fur-

ther performance by the contractors. Each party to the contract claimed that the other made the first default and the trial court found against the owner on that issue. The contractors abandoned the contract March 5, 1889, and the next day made a general assignment for the benefit of their creditors to the defendant Stewart. March 23, 1889, the owner caused notices to be served upon the contractors and their assignee requiring them to complete the contract according to the plans and specifications, and on their omitting to do so, although there was no provision in the contract on the subject, he completed it himself at an expense of $3,989. He conceded a recovery to the extent of the difference between that sum and the amount unpaid on the contract, which is enough to protect the plaintiff, but not enough to fully pay all of the other lienors.

The trial judge found that by the fifteenth of February, 1889, the contractors had performed all the work and furnished all the materials required to entitle them to the second payment and that they demanded a certificate from the architect, accordingly, but that he wrongfully and unreasonably refused to give them one. They also demanded the second payment from the owner, after informing him of the facts, but he refused to pay any part thereof without the certificate of the architect, and soon after they refused to complete the building.

Upon the request of the defendant, it was further found that at the time of the abandonment of the contract, the contractors " had not made and set in each partition back of each water-closet a four by ten inch ventilator with round tin ventilator in each closet and extended two feet above the roof, as required by the specifications ; " that they " had not placed in the cellar, beneath the girders, the two locust posts," as so required, and that window frames made of cottonwood " were put in without the knowledge or consent " of the owner. The court refused to find upon the like request that several other things required by the specifications had not been done.

The appellant did not ask for a reversal of the judgment, but for a modification thereof by deducting all that was allowed against him, except the difference between the amount unpaid and the cost of completion.

The following is the opinion in full :

" If the second installment was due when the demand of payment was made by the contractors, they could lawfully decline to go on with the contract, because the owner had refused performance on his part. (*Graf* v. *Cunningham*, 109 N. Y. 369; *Schwartz* v. *Sanders*, 46 Ill. 18.) If the second installment was not then due, the contractors were in default and the lienors, who claim under them, are entitled to a recovery only to the extent conceded by the owner, or to the difference between the amount unpaid at the date of such default and the sum required to complete the contract. (*Van Clief* v. *Van Vechten*, 130 N. Y. 571; 42 N. Y. S. R. 736; *Malbon* v. *Birney*, 11 Wis. 108.)

" By the terms of the agreement, the second payment was to become due when the floors were laid, " partitions set and ready for mason." The owner claims that the contractors failed in performance, to the extent necessary to entitle them to the second payment, by omitting several things required by the plans and specifications. The lienors claim that the features omitted were waived by the architect, prevented by the owner, or not required to be done as a condition precedent to the second payment, and evidence was given in support of the claim, but the court made no specific finding upon the subject. The use of cottonwood in certain window frames, required to be made of pine, was not denied, but one of the contractors testified that on hearing that the architect objected, he went to see him and said that cottonwood could be used as well as pine ; that they were merely skeletons and were covered over with pine casings on the outside and inside. After hearing this explanation, the architect said : " You may use those frames, but bring no more cottonwood on the job." The witness further testified that no cottonwood was used after that, except that some balusters were turned for use on the rear piazza, but they were no part of the work required to be done prior to the second payment. According to the evidence of another witness, no cottonwood whatever was brought on the premises after the architect objected. The architect testified that he allowed certain window frames made of cottonwood to be put in, provided the contractors would use no more cottonwood in the building, but he claimed that after that, more

window frames of the same kind were put in against his pro-test. When, however, he was asked to certify that the second payment was due, he did not mention this as an objection, but based his refusal upon other grounds.

"There was other testimony tending to corroborate the theory of either side upon the question of consent to the change, which thus became a question of fact for the trial court to determine, and it will be presumed, in support of the finding that the second payment was due, that the court found in favor of the lienors upon this issue. (*Ostrander* v. *Hart*, 130 N. Y. 406 ; 42 N. Y. St. Rep. 513 ; *Thompson* v. *Bank of British North America*, 82 id. 1 ; *Bump* v. *Nat. Bank of Pottsdam*, 96 id. 125.) But the appellant insists that the architect had no right to substitute an inferior article without the consent of the owner, and the authorities support that position. (*Glacius* v. *Black*, 50 N. Y. 145 ; *Bigler* v. *Mayor*, etc., 9 Hun, 253.)

"The court, however, found, upon evidence that is not printed in the case, but which, it is expressly stipulated, proved the fact, 'that said Sahagian employed the said George Ray-ner as his architect and servant to superintend the work of erecting said house and the doing of the work thereof, and the said Rayner did so superintend such work and the erect-ing of such house.' The contract provided that all work was to be done to the satisfaction of the architect, and the owner told one of the contractors that everything was left with the architect. Inasmuch as Mr. Rayner was not only the archi-tect but was also the agent of the owner and represented him in the erection of the building, we think that he had authority to consent to the substitution complained of. The fact that the change was made without the knowledge or consent of the owner, as found by the court, evidently means, when the con-text is considered, without his personal knowledge or consent,

"It is further insisted that injustice was done the owner because the contractors failed to put two locust posts in the cellar, beneath the girders, as required by the specifications. The object of these posts was to support the girders, which in turn support the partitions, that were to be set and ready for the mason before the second installment became payable,

While there was nothing in the specifications to indicate when the posts were to be put in, as the object in putting them in was to support the partitions, it is reasonable to conclude that it was contemplated by the parties that they were to be placed in position before the partitions were built. The contractors, however, were only to do the carpenter work. They had nothing to do with the mason work, which the owner was to do himself. Evidence was given tending to show that the locust posts could not be put in, because the cellar was not sufficiently excavated to permit it, and the stone foundations upon which they were to rest were not built, all of which was mason work. The contractors, therefore, put in temporary posts, so that they could go on with their work, and, according to the evidence, this was the only practicable course. The architect did not include the omission to put in permanent posts among his reasons for declining to give a certificate. We do not think that the owner can take advantage of his own omission, nor justly complain because work was not done, when the failure to do it was owing to himself. (*Smith* v. *Norris*, 120 Mass. 58; *Welch* v. *Sherer*, 93 Ill. 64; *Charnley* v. *Honig*, 74 Wis. 163.)

"The specifications required the contractors 'to make and set in the partition back of each water-closet a four by ten inch ventilator.' The trial judge found that these were not put in, but he refused to find that the partitions were not properly set and ready for the mason on that account. The specifications do not provide when the ventilators were to be put in, nor whether they were to be behind lath and plaster or behind wood. They were not a part of the partition, but were to be 'set in' it, presumptively after the partition was erected. Some witnesses testified that if they were put in and plastered over, the plaster, having no 'clinch,' would not adhere thoroughly, and that the proper way was to put them behind wood, so that they would be accessible, for repairs and other purposes, without tearing away the lath and plaster. Evidence was also given, without objection, to the effect that they should be put in after the masons had done their work of plastering the partitions. Other witnesses testified that they should be lathed and plastered over, so that they could not be seen, and

that this was the usual way. The architect was of this opinion, but he gave no such direction to the contractors and did not say so when he refused the certificate, nor allude to the ventilators in any way. This conflict in the evidence justified the finding of the trial court in favor of the lienors upon this subject, and its refusal to find as requested by the owner. Access to the ventilators was a matter of some import nce, and in the absence of any provision in the specifications, or instruction from the architect, it was reasonable to conclude that the contractors had the right to put wood, instead of lath and plaster, over the open spaces in which the ventilators were to be placed.

" The observations already made apply to the other alleged omissions on the part of the contractors, none of which were specifically relied upon by the learned counsel for the owner, either in his oral argument or in his points.

" As the payments were to be made upon the certificate of the architect, his refusal to certify that the second installment was due is relied upon as a conclusive defense to the efforts of the lienors to enforce their claims in excess of the amount conceded by the owner to be due.

" According to the evidence of the contractors, they made four demands of the architect for a certificate that they were entitled to the second payment. On the occasion of the first demand he refused because the door-jambs were not set. Thereupon the contractors, although claiming that the door-jambs were not a necessary part of completing the house to the laying of the floors and the setting of the partitions, proceeded to set the door-jambs, when they again demanded a certificate, but the architect said that he would not issue one until the back piazza was up. The contractors insisted that this was not required because it was outside of the house, but, notwithstanding, they put it up and laid the floors therein. When the certificate was next demanded the architect refused it because the piazza was not finished. They informed the owner of what they had done, and that the architect would not give a certificate, and asked him to pay them, but he refused, stating that he did not know anything about it, and that everything was left with the architect. A witness testi-

fied to a statement made by the architect, although the latter denied it, that in drawing the contract he had made the first and second payments too large, thus suggesting a personal reason for his persistent refusal. There was no request to find that the piazza was not finished. We think that the evidence warranted the finding, as made by the trial court, that the architect unreasonably withheld the certificate. While it may have been proper to require the piazza to be erected and the floor thereof laid, so that progress of erection should be uniform inside and outside of the building, it does not seem reasonable to require the piazza to be finished at a period when no part of the interior was finished. The second payment was earned when the floors were laid and the partitions set, ready for the masons. This did not include the completion of the back piazza, either by specific mention or because that work was necessary in order to do anything that was specifically mentioned. As the refusal of the architect was based upon an unreasonable requirement, it furnished no protection to the owner. (*Thomas* v. *Fleury*, 26 N. Y. 26 ; 15 Am. & Eng. Encyc. Law, 77.)

"The court refused to find, upon the request of the owner, that he had paid the contractors the sum of $1,680 on account of said work. This included the first payment of $1,500, which is admitted; the further sum of $100, which it is not denied, was in fact delivered by the owners to the contractors, and orders to the amount of $80 drawn by them and accepted by him. No controversy arises as to the payment of $1,500, but it is claimed that the rest, $180, was a loan and not a payment, and that the court is presumed to have so found. One of the contractors testified as follows : 'I think Mr. Sahagian gave us $100 besides that payment of $1,500, and he accepted orders for $80, and he and I agreed on $1,680 ; * * * I have received altogether * * * $1,680, $1,500 on the first payment and $180 loaned to us. It was not credited to me on account on the second payment, but on account of the contract. That money, the $180, was given to me by Sahagian as an accommodation, and had nothing to do with the payment at all.' The owner testified : 'I paid them $100, and then I paid $80. He brought an order from Mr. Hunt. The $100 was

paid before the first payment. This was done, as James Stewart says, because he and I were very friendly.' Our attention has been called to no other testimony upon the subject. The statement of the contractor that he and the owner agreed on $1,680 admits of no construction, except that they agreed on it as a payment. His subsequent statement that it was not credited on account of the second payment, but on account of the contract, does not vary the legal effect of the transaction, but confirms the theory of a payment on the contract. Any payment credited on the contract after the first must, of necessity, be applied on the second, or it cannot be applied at all, and the owner can get no benefit from it. When the witness characterized it as a loan, it is evident that he meant a loan or advance on account of the contract. We think that the evidence compels the conclusion of payment to the amount claimed, and that the learned trial court, amidst the confusion caused by the presentation of four sets of requests, each in behalf of a separate interest, inadvertently omitted to give credit for the entire sum actually paid.

" After examining all of the exceptions, we are of the opinion that upon the facts as found, together with those having the support of evidence that are presumed to have been found under the rule, the record presents no error calling for a reversal or modification, except the refusal to find just considered.

" The judgment should be reversed and a new trial granted, with costs to abide the final award of costs, unless the defendants Lawrence, who filed the last lien, and William H. Stewart, as assignee of Stewart & Edmunds for the benefit of creditors, stipulate, within thirty days, to reduce the amount of the recovery in their favor, respectively, by deducting therefrom the sum of $180, with interest thereon from March 7, 1889, in which event the judgment as so modified should be affirmed, without costs in this court to any party."

*Joseph F. Daly* for appellant.

*John H. Ferguson* for plaintiff, respondent.

*R. E. Prime* for defendants, respondents.

VANN, J., reads for reversal, unless a stipulation for a reduction of the recovery is made, and for a modification if stipulation is made, as specified in the opinion.

All concur.

Judgment accordingly.