MILTON SCHNAIER, Respondent, *v.* PINKUS NATHAN, Appellant.

*Architect authorized to consent to deviations from a building contract — when the owner is concluded by his consent to changes made in the work.*

In the absence of proof that an architect employed by an owner to supervise the performance of a building contract, and vested with authority to consent to deviations from the contract, acted fraudulently or collusively in giving such consent, it is immaterial whether the owner, at the time the deviations were made, in accordance therewith, had knowledge of them or not.

VAN BRUNT, P. J., dissented.

APPEAL by the defendant, Pinkus Nathan, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 4th day of October, 1899, upon the decision of the court, rendered after a trial at the New York Special Term, foreclosing a mechanic's lien.

*Thomas C. Campbell,* for the appellant.

*Milton Mayer,* for the respondent.

McLAUGHLIN, J.:

This action was brought to foreclose a mechanic's lien for a balance of $586.89, alleged to be due the plaintiff under a contract to do the work and furnish the materials necessary in plumbing defendant's building.

There have been two trials. On the first the plaintiff had a judgment, which, on appeal to this court, was reversed and a new trial ordered, on the ground that the plaintiff could not recover under a complaint alleging strict performance of the contract by proving substantial performance. (31 App. Div. 225.) After the new trial had been ordered the complaint was amended, the plaintiff alleging that he was entitled to recover because ·he had substantially performed the contract, except so far as performance had been waived by the defendant. Under the complaint, as thus amended, the second trial was had, and the plaintiff again obtained a judgment, from which the defendant has again appealed.

The defendant, in his answer, denied the material allegations of the complaint, and alleged that the plaintiff had failed to perform the contract by furnishing the materials and performing the work therein specified. At the trial it was conceded — at least there was no dispute between the parties — that the plaintiff did not furnish certain materials of the kind and quality called for by the contract, but he claimed that in each instance where a change was made in the contract, such change was made by the authority and direction of either the defendant himself or his architect, and substantially all of the testimony introduced by both of the parties was directed to the issue as to whether the defendant or his architect had consented to the changes which were made. The trial court found, as a fact, that the plaintiff, while performing the work, made certain changes and alterations, but that the same were made " with the consent and approval of the defendant and under the direction of the architect, and that the architect was authorized by the defendant to direct such changes to be made." We are entirely satisfied, after a careful consideration of the record, that this finding is abundantly sustained by the evidence. To demonstrate this it is only necessary to consider a few of the more important changes which were made and of which the defendant complains.

(1) By the contract and specifications, which were made a part of it, the plaintiff agreed to furnish and place in the kitchen a 150-gallon boiler. He furnished instead a 100-gallon boiler, but he testified that he procured and set up, in the first instance, a 150-gallon boiler; and this does not appear to have been disputed, and, after he had done so, he notified the defendant, and asked him to select the range

which was to be used for heating the water in the boiler; that the defendant thereafter did select a range, but the capacity of it was only sufficient to heat a 100-gallon boiler. Immediately upon ascertaining this, he notified the defendant of that fact, and the defendant replied: "You see my architect and see what he can do;" that the plaintiff thereupon saw the architect and it was agreed between them that the only way the 150-gallon boiler could be used was by the procurement of a larger range, which would necessitate the cutting out of the "chimney breast." The architect said he would see if the defendant would consent to this, and shortly after informed the plaintiff, "Mr. Nathan will not disturb the chimney breast, nor will he disturb the kitchen range," and the architect thereupon directed the plaintiff to take out the 150-gallon boiler and put in its place one holding 100 gallons. This the plaintiff did, and the cost of making the exchange nearly or quite equalled the difference in the price of the boilers. The plaintiff's testimony in this respect was corroborated by the architect, Mr. Wagner, and in some respects by other witnesses. The contract also called for an 80-gallon boiler to be placed in the laundry, and the plaintiff testified that he procured a boiler of that capacity, but when he came to set it up, it covered a ventilator or register, which the architect would not consent to have done, and that by his direction he procured a 60-gallon boiler instead; and that the expense to the plaintiff in making the change was equal to the difference in price of the boilers.

(2) The defendant claimed that the plaintiff failed to perform the contract by furnishing a certain kind of water pipe called for by the specifications, but as to this change the plaintiff testified that he first had a conversation with the defendant about it, and that the defendant then said to him, "You go and see my architect, Mr. Wagner; I don't understand anything about plumbing; that is what I got an architect for. * * * You do whatever Mr. Wagner tells you, and I will agree to whatever Mr. Wagner tells, he knows about plumbing, I do not; that is what I have an architect for;" that the plaintiff then talked with the architect and by his direction the change was made. And the plaintiff was corroborated in this respect by the architect. It was also made to appear that the pipe furnished was equal in value to that called for in the contract.

(3) The contract called for two bath tubs, known as Mott tubs, class A. The plaintiff did not furnish Mott's tubs, but he testified that a Mott A tub could not be procured by him under six or eight weeks, and that the defendant, on being informed of the fact, told the plaintiff to get class A tubs of some other make, which he did. It appeared that class A is a term used to designate the best tubs, perfect in all respects, and the testimony of several witnesses who examined the tubs which the plaintiff did furnish, showed that they were in fact class A tubs and as good as the Mott A tub. Plaintiff also testified that the reason certain tubs were not decorated as called for in the contract was because the defendant's wife told him not to decorate them, as she had not determined what style of decoration she wished, and the defendant had previously told the plaintiff to take orders from his wife.

(4) It appeared that certain valves, known as Jenkins valves, were not furnished in all cases where required by the specifications, but there was evidence to show that the valves furnished were of equal quality; that this change was made by the direction of the architect, in order that the completion of the work might not be delayed, as the Jenkins valves could not be obtained from the manufacturer at the time they were required.

(5) As to the number of faucets being changed from three to two, it appeared, from the testimony of both the defendant and the architect, that the change was made after consultation of the plaintiff with the architect and by the latter's direction.

Several other deviations from the contract were claimed by the defendant, but they were of a trivial character, or what has been said of the foregoing is equally applicable to them. It is sufficient to say, without considering them at length, that they were, in each instance, made by the direction or with the consent of the architect, and the contract between the parties specified the architect and required that the work should be done to his satisfaction. The architect was employed by the defendant to supervise the construction of the building in all of its details. This the defendant admitted on the cross-examination. It was neither alleged nor proved that the architect acted fraudulently or collusively, and, in the absence of such allegation or proof, he had authority to consent to the changes complained of, and, having that authority, it is immaterial

whether the defendant, at the time, had knowledge of them or not. *Thomas* v. *Stewart,* 132 N. Y. 580.)

As already indicated, the evidence sustained the finding of the trial court that the plaintiff performed his contract, except so far as it was waived by the defendant, and it, therefore, follows that the judgment is right and must be affirmed, with costs.

BARRETT, RUMSEY and INGRAHAM, JJ., concurred; VAN BRUNT, P. J., dissented.

Judgment affirmed, with costs.