(159 App. Div. 612)

PEOPLE ex rel. R. T. FORD CO. v. LEWIS et al.

(Supreme Court, Appellate Division, Fourth Department. December 23, 1913.)

1. STATES (§ 107*)—BUILDING CONTRACTS—AUTHORITY OF STATE ARCHITECT.
   Under Public Buildings Law (Consol. Laws, c. 44) § 8, as amended by Laws 1910, c. 448, providing that the State Architect shall prepare the drawings and specifications, shall supervise the construction of all new buildings erected at the expense of the state, and shall see that the materials furnished and the work performed accord with such drawings and specifications, the State Architect cannot consent to a substitution of materials by a contractor erecting a building at the State School for the Blind, the appropriation for which provided that the work should be done pursuant to State Charities Law (Consol. Laws, c. 55) § 49, providing that the Governor and the president of the State Board of Charities shall approve or reject plans and specifications for the erection of buildings, and contracts for such work may be let by the board of managers.
   [Ed. Note.—For other cases, see States, Cent. Dig. § 105; Dec. Dig. § 107.*]

2. PRINCIPAL AND AGENT (§ 101*) — AUTHORITY OF ARCHITECT — BUILDING CONTRACTS.
   An architect employed by an individual owner for the erection of a building has not, by virtue of his employment, the authority to consent to a change or substitution of materials.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 255, 256, 330, 346; Dec. Dig. § 101.*]

3. STATES (§ 107*)—BUILDING CONTRACTS.
   A contract for a building at the State School for the Blind, which made the State Architect's certificate approving the work a condition precedent to payment, and provided that he should be the sole judge of the materials and work furnished, and that, if the contractor should desire to use some other material than that specified, he should first make application to the State Architect, and that no such change could be made without such consent, does not authorize the Architect to consent to the substitution of a concrete foundation for one of stone and brick, and the contractor, having substituted such foundation, cannot compel the board of managers to make payment in accordance with the Architect's certificate.
   [Ed. Note.—For other cases, see States, Cent. Dig. § 105; Dec. Dig. § 107.*]

4. STATES (§ 107*)—BUILDING CONTRACTS—ACCEPTANCE.
   Where a contractor, employed to erect a state school for the blind, substituted, with the consent of the State Architect, a concrete foundation for one of stone and brick, the action of the board of managers in agreeing to the substitution, provided the contractor made a greater deduction than that required by the Architect, did not constitute an acceptance of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the foundation, precluding the board from thereafter contending that the contractor had failed to perform his contract.

[Ed. Note.—For other cases, see States, Cent. Dig. § 105; Dec. Dig. § 107.*]

Appeal from Special Term, Genesee County.

Application by the People of the State of New York, on relation of the R. T. Ford Company, a corporation, for mandamus against F. Park Lewis and others, constituting the Board of Managers of the New York State School for the Blind at Batavia, N. Y. From a judgment issuing a peremptory writ, respondents appeal. Reversed.

The New York State School for the Blind at Batavia, which was established by chapter 587 of the Laws of 1865, is now governed and the powers of its board of managers defined by article 39 of the Education Law, being chapter 16 of the Consolidated Laws (Laws of 1910, c. 140). By section 998 the board of trustees are given charge of all the affairs of the school. By chapter 822 of the Laws of 1911, the Legislature appropriated $35,000 for a new building for this school and $2,500 for repairs and equipment, and, by chapter 530 of the Laws of 1912, a further sum of $15,000 for new buildings. This school is among the state institutions required by law to report to the State Fiscal Supervisor, and each of these acts required the work for which the appropriations were made to be done pursuant to the provisions of section 49 of the State Charities Law, being chapter 55 of the Consolidated Laws (Laws of 1909, c. 57, as amended by chapter 149 of the Laws of 1909 and chapter 47 of the Laws of 1910).

Drawings and specifications for the new building were prepared by the State Architect, and, after being approved by the proper state officers and the board of managers of the school, the work, after due advertisement, was let to relator, the R. T. Ford Company, a domestic corporation, as the lowest bidder, for the sum of $37,000, and on September 27, 1912, the board of managers of the school entered into a written contract with relator. By the specifications, the foundations and the basement walls were to be constructed of brick 12 inches thick, with a facing 6 inches thick of blue Indiana limestone. During the month of October relator discovered that there would be considerable delay in obtaining blue Indiana limestone, and upon consultation with the State Architect, who, by the statutes and by the terms of the contract, was to supervise the work as architect, it was arranged that relator might substitute a Portland cement concrete foundation and basement walls for and in place of the brick and blue Indiana limestone specified. The contract required relator to complete the building on or before June 4, 1913, and subjected relator to liability and damages at the rate of $10 per day for delay in completion beyond that date. The contract also provided for the payment to relator of 85 per cent. of the value of the material and work incorporated in the building, as certified by the State Architect, as the work progressed, and the balance upon the satisfactory completion of the contract, when so certified by the State Architect. After the completion of the foundations and basement walls of concrete and of considerable other work on the building, the State Architect on January 14, 1913, certified to the board of managers that the sum of $16,385.60 had become due and payable to relator pursuant to the terms of the contract. On December 14, 1912, the State Architect and relator agreed upon the sum of $767.40 as the amount to be deducted from the sum payable to relator under the contract for the difference in cost of the basement walls as originally specified and as so constructed. On January 23, 1913, the board of managers refused to make the necessary voucher and certificate to provide for the payment of the sum so certified by the State Architect as due, unless relator would consent to a deduction of $810 in place of the $767.40 so agreed upon between relator and the State Architect for the difference in the cost of the basement walls. This additional deduction relator refused to make. The board of managers were informed of the change in material for the construc-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of the basement walls before relator began their construction, and said board thereupon objected to the change and notified the relator that it would not consent to such change.

On July 7, 1913, relator moved at Special Term for a peremptory writ of mandamus to require the board of managers to pay or issue its voucher for the payment to relator of said sum of $16,385.60. This motion was opposed by the board of managers, and on September 6, 1913, an order was made by the Special Term directing such writ to issue.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Thomas Carmody, Atty. Gen. (James A. Parsons, of Albany, of counsel), for appellants.

W. W. Armstrong, of Rochester, for respondent.

FOOTE, J. Appellants, who are the board of managers of the New York State School for the Blind at Batavia, appeal from an order of the Special Term which awards to relator a peremptory writ of mandamus, requiring said board to pay or direct the payment to relator, in the form provided by law, of the sum of $16,385.60 and interest as part payment to relator upon the contract between the parties for the construction of a new building upon the grounds of said school.

The only question involved is as to the power of the State Architect to change the specifications of the contract as to the foundations of the building so as to substitute foundations made of Portland cement concrete for the blue Indiana limestone, with brick backing, required by the contract. This change was authorized and directed by the State Architect, without authority from the board of managers and without their knowledge, because of representations by relator that it would not be able to procure the Indiana limestone in time to permit erecting the foundations and exterior walls sufficiently early to allow the work of interior finishing to proceed during the winter, thus probably delaying the completion of the building beyond the contract date of June 4, 1913. After the change was authorized, but before relator began to construct the concrete foundation, the board of managers notified relator that it would not consent to such change, whereupon relator referred the matter to the State Architect, who instructed relator to proceed to erect the foundations in concrete, notwithstanding the objections of the board of managers, and, in reply to communications from the board of managers on the subject objecting to such change, the State Architect stated in substance that he had authorized the change to avoid delaying the construction of the building; that he considered it within his jurisdiction to do so; and that the law did not require "minor changes of this nature" to be approved by the board of managers, but the intent of the law left such matters to the discretion of the State Architect. Relator decided to act on the assumption that the State Architect had authority to authorize the change in spite of the objection of the board and proceeded to build the foundations of concrete. On January 14, 1913, the State Architect certified to the board of managers that $16,385.60 had become due and payable to relator, being 85 per cent. of the work performed to that date, including the finished concrete foundations. The

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

board has refused to make the necessary order or certificate to have this sum paid to relator by the state. The building has since been com·· pleted by relator. Meantime, a new State Architect has been appointed, who refuses to give relator any further certificates pending settlement between relator and the board in reference to the foundation walls, and relator has received no part of the $37,000 which by the contract it was to receive for erecting this building.

The inquiry, therefore, is whether the State Architect has the authority, by statute or by the contract between the board of managers and relator, to direct or allow relator to substitute a concrete foundation for the cut stone and brick foundation required by the contract, without the consent and against the objection of the board of managers, who are the parties to the contract with relator.

[1, 2] The only statute which defines the powers and duties of the State Architect is the Public Buildings Law, being chapter 44 of the Consolidated Laws (Laws 1909, c. 48), as amended by chapter 448 of the Laws of 1910. By section 8, as thus amended, it is provided:

"Except as provided in the next section, the State Architect shall prepare the drawings and specifications and supervise and control, as Architect, the construction of all new buildings erected at the expense of the state, shall also prepare the drawings and specifications for additions to existing buildings, and for the alteration or improvement thereof, and shall see that the materials furnished and the work performed in constructing, altering or improving any such building are in accordance with such drawings and specifications, and that the interests of the state are fully protected. * * * He shall prepare regular and standard forms of contracts, to be approved by the Attorney General, which shall be used in all work let by contract and no payment shall be made on any such contract except upon his regular certificate after audit by the Comptroller."

The appropriation for the new building for the New York State School for the Blind was made by chapter 822 of the Laws of 1911, by which $35,000 was appropriated, and by chapter 530 of the Laws of 1912, by which $15,000 additional was appropriated, and each of these acts provides that the work for which the appropriation is made shall be done pursuant to the provisions of section 49 of the State Charities Law (Consol. Laws, c. 55), as amended by chapter 47 of the Laws of 1910. This section provides:

"The Governor, the president of the State Board of Charities and the Fiscal Supervisor, or a majority of such officers, shall approve or reject plans and specifications for the erection, alteration, repairs or improvements of buildings or plant for any state institution reporting to the Fiscal Supervisor; * * * and no such erection, alteration, repairs or improvements shall be made until the plans and specifications therefor have been so approved. Contracts for such work of erection, alteration, repairs or improvements may be let by the board of managers or trustees, with the approval of the Governor, the president of the State Board of Charities and the Fiscal Supervisor, or a majority of such officers, for the whole or any part of the work to be performed."

We find nothing in these statutory provisions which confers upon the State Architect authority to himself make any substantial or material alteration in the contract for this building. He is a state officer and not an agent of the board of managers. His duty as State Architect is, in the words of the statute, to "see that the materials furnished and

the work performed in constructing * * * such building are in accordance with such drawings and specifications, and that the interests of the state are fully protected"; and it is for this purpose only that he is to "supervise and control, as architect, the construction of all new buildings erected at the expense of the state." Architects employed by individual owners for the erection of buildings have not, by virtue of the nature of their employment, the power to consent to the alteration of a contract between the owner and the contractor, in the absence of authority from the owner, or, what is its equivalent, that the owner has by his conduct led the contractor to believe he has been given such power by the owner. Glacius v. Black, 50 N. Y. 145, 10 Am. Rep. 449; Burke v. Ireland, 26 App. Div. 487, 50 N. Y. Supp. 369; Fitzgerald v. Moran, 141 N. Y. 419, 36 N. E. 508; Becker v. City of New York, 176 N. Y. 441, 68 N. E. 855; Langley v. Rouss, 185 N. Y. 201, 77 N. E. 1168, 7 Ann. Cas. 210; Mercantile Trust Co. v. Hensey, 205 U. S. 298, 27 Sup. Ct. 535, 51 L. Ed. 811, 10 Ann. Cas. 572.

The distinction between the case at bar and Thomas v. Stewart, 132 N. Y. 580, 30 N. E. 577, and similar cases, is sufficiently pointed out in Langley v. Rouss, supra.

[3] Does the contract in this case vest the State Architect with such power? The contract is made between the board of managers and the relator. Prefixed to the contract is the statement that it is "by authority of chapter 822, Laws of 1911," and "chapter 530, Laws of 1912," thus drawing attention of relator, if that were necessary, to the special provisions of these statutes already referred to, requiring the work to be done pursuant to the provisions of section 49 of the State Charities Law. But the contract itself provides in express terms "that the contractor shall conduct the work * * * in compliance with all laws of the state of New York and with the lawful directions of the officers, agents or representatives of the state." Thus, by the contract, the statutory provisions above referred to are agreed to be observed. While the State Architect prepares the plans and specifications for new buildings, they are to be approved by the state officers named in the statute before the board of managers are authorized to adopt the plans and let contracts for the erection of a building. Thus the kind and character of building to be erected is subject to the approval of a body of state officers and the board of managers, and, as the concurrent action of these two bodies is necessary before a contract can be entered into, it would seem to follow that no material or substantial alteration of the contract can be made without the approval of these two bodies, unless express authority therefor be found in the statute, and we find no such statutory authority.

Relator contends that certain provisions of the specifications annexed to the contract give the State Architect, expressly or by necessary implication, such power. The provisions referred to are those which provide for the State Architect's certificate approving the work preliminary to payment, by which the right is reserved to the board of managers to make additions, deductions, or deviations from the work, the order for which is to be given in writing by the State Architect; the provision that the State Architect must be the sole judge of the mate-

rials and work furnished; the provision that after the contract has been made, if the contractor should desire to use some other material than that specified, he should first make application in writing to the State Architect, and that no such change should be made without the written consent of the State Architect; and the provision that all communications between the board of managers and the contractor should be through the State Architect.

We find nothing in these, or in any of the specifications, which confers upon the State Architect authority to himself change the kind of building material specified to be used, without consultation with the board of managers, or, as in this case, over their objection. We need not consider here whether relator, upon receiving an order from the State Architect to substitute a different material for constructing the foundations from that specified, would be justified in assuming that such order proceeded from the board of managers through the State Architect, or was issued with their approval and consent, for here relator knew, before beginning to build the foundation, that the board had not given its consent, but had objected to the change. We think, under these circumstances, relator was bound, before proceeding to make the change, to ascertain, under the law and the contract, whether the State Architect had the power to authorize it. The substitution of concrete for a brick and cut stone foundation is an important and substantial change in the character of the building. It appears to be a substantial rather than a "minor" change, as suggested by the State Architect.

[4] Some time after the foundations were completed and the State Architect had given to relator a certificate for the proposed payment of $16,385.60, the same was submitted to the board of managers, and on the 23d of January, 1913, the board adopted the recommendations of its executive committee to approve a voucher for the payment of this sum, provided relator would consent to a deduction from the contract price of $810 on account of the decreased cost of the foundations, in place and stead of a deduction of $767.40, which had been agreed upon between relator and the State Architect. This additional reduction of $42.60 relator refused to make. We are of opinion that this resolution was not such an acceptance of the foundations by the board of managers as now precludes them from contending that relator has failed to perform his contract in reference thereto.

While the change in these basement walls may have been for the best, under the circumstances, and it may now be impracticable to replace the walls with the kind specified, and while the board of managers has expressed its willingness to accept the walls upon relator's increasing by only $42.60 the deduction for the less cost of the concrete, so that, in one aspect of the case, only this small sum is in controversy between the parties, still our decision of the questions presented and necessarily involved requires a definition of the powers of the State Architect, acting independently of the state officers and board of managers, applicable alike to all similar contracts, where the subject-matter in question may be of far greater consequence to the parties interested and to the state.

Our conclusion is that the order appealed from should be reversed, with costs, and that the motion should be denied, with $10 costs.

Order reversed, with costs, and motion denied, with $10 costs as a matter of law and not in the exercise of any discretion. All concur.