THE PEOPLE OF THE STATE OF NEW YORK ex rel. RAPID TRANSIT SUBWAY CONSTRUCTION COMPANY, Respondent, *v.* ALFRED CRAVEN, as Chief Engineer of the Public Service Commission of the State of New York, First District, Appellant.

Contract — New York (city of) — construction of provision in contract for construction of subway that all claims of contractor for extra work must be approved by chief engineer of subway commission — mandamus — if chief engineer refuses to pass upon such a claim a writ of mandamus will issue directing him to act.

In a contract between the rapid transit railway commissioners on behalf of the city of New York and the relator, for the construction of part of the subway system in that city, which contract contained a large number of provisions involving complicated questions, it was provided that the determination of the chief engineer of the commission as to work done or materials supplied was to be in writing and to be binding and conclusive upon the city, unless the commission should appeal within ten days after the filing of such determination, and notice of filing given to the president of the commission; and it was to be binding upon the contractor unless it should appeal within ten days after receiving a duplicate copy of the determination. It further provided that the contractor should be entitled to additional payments for additional work by reason of additional specifications, drawings, details or other

requirements, "*only upon the production of the certificate and determination of the engineer, if unappealed from,*" or, if appealed from, "*then only upon and according to the final award of the arbitrators,*" whose appointment was therein provided for. The appellant engineer refused to pass upon claims of the relator for extra work on the ground that under the contract he had no right to make a determination because it would "inevitably involve the city in litigation." *Held,* that this is a duty enjoined upon him by the express terms of a contract which has the force of a public statute; and he being a quasi public official the performance of the duty may be enforced by mandamus unless the relator has another remedy at law, and that the circumstances disclosed by this record clearly indicate that it has no other remedy. (*People ex rel. Cranford Co.* v. *Willcox,* 207 N. Y. 743, approved and followed.)

*People ex rel. Rapid Transit Subway Construction Co.* v. *Craven,* 160 App. Div. 925, affirmed.

(Argued February 23, 1914; decided March 17, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 16, 1914, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendant to make a determination upon certain claims for additional compensation presented to the relator.

The facts, so far as material, are stated in the opinion.

*Le Roy T. Harkness* and *George S. Coleman* for appellant. There is no duty in the premises enjoined upon Mr. Craven by "charter, or statute, or law." (*People ex rel. Coppers* v. *Trustees,* 21 Hun, 184; Spelling on Injunctions [2d ed.], § 1379; *People ex rel. Ready* v. *Mayor, etc.,* 144 N. Y. 63; *People ex rel. Cranford Co.* v. *Willcox,* 153 App. Div. 759; 207 N. Y. 743.) The writ of mandamus will not issue where there is an ordinary or specific legal remedy adequate to enforce the particular legal right of the relator. (*People ex rel. Lunney* v. *Campbell,* 72 N. Y. 496; 2 Fiero on Spec. Pro. [3d ed.] 1358; 2 Dillon on Mun. Corp. [5th ed.] § 823; *Thomas* v. *Fluery,* 26 N. Y. 26; *Bowery Nat. Bank* v.

*Mayor, etc.,* 63 N. Y. 336; *Flaherty* v. *Miner,* 123 N. Y. 382; *Thomas* v. *Stewart,* 132 N. Y. 580; *MacKnight Flintic Stone Co.* v. *Mayor, etc.,* 160 N. Y. 72.)

*Morgan J. O'Brien, Albert B. Boardman, Stephen P. Anderton* and *James L. Quackenbush* for respondent. As the chief engineer is a public official, his determination as such involves the performance of a duty enforceable by mandamus. (*People ex rel. Henry* v. *Nostrand,* 46 N. Y. 375; *People ex rel. Cranford Co.* v. *Willcox,* 207 N. Y. 703; 153 App. Div. 759; *People ex rel. Ready* v. *Mayor, etc.,* 144 N. Y. 63.)

WERNER, J. The Supreme Court at Special Term granted to the relator a writ of peremptory mandamus commanding the appellant, as chief engineer of the public service commission, to make a written determination upon the claim of the relator for compensation for extra work performed under a contract for the construction of a part of the present subway system in Greater New York. Such an application as this is governed by the well-settled and familiar rule that the relator must show a clear legal right to the writ and that it has no other legal remedy. This rule is too firmly established to justify the citation of authority.

The provisions of the so-called Rapid Transit Act (L. 1891, chap. 4, as amended) brought into existence the board of rapid transit railway commissioners. In 1902 this board, for and on behalf of the city of New York, entered into a contract with the relator for the construction, equipment and operation of the Brooklyn-Manhattan Rapid Transit railroad, which extends from a point near the general post office building in Manhattan to the Flatbush avenue station of the Long Island railroad in Brooklyn. This was done pursuant to powers specifically granted to the commission by the statute.

In this proceeding we are concerned only with a sub-

## 446 PEOPLE EX REL. R. T. S. CONST. CO. v. CRAVEN.

contract for construction, known as sub-section 2-A, which the relator sublet to one Onderdonk, who in turn assigned it to the New York Tunnel Company. The stretch of road to be built under that sub-contract extended from Manhattan across the East river to Joralemon street and thence to Fulton street in Brooklyn.

Pursuant to the command of the statute the commission appointed a chief engineer, the appellant herein, and when the contract with the relator was made that instrument defined with great particularity the powers and duties of the chief engineer respecting the preparation of plans and the conduct of the work. By the terms of the contract the commission reserved the broadest power to amplify the plans, to add explanatory specifications, and to furnish additional specifications and drawings within the limits of the general purview of the work. It was expressly stipulated that this might be done during the progress of the work, and that if any additional burden should be cast upon the contractor it was to receive reasonable extra compensation. In these circumstances it was necessary, of course, to clothe the chief engineer with such broad powers as would enable him to carry out the directions of the commission. These powers are set forth in the contract with an amplitude of detail that need not be repeated here, and we shall content ourselves with paraphrasing a few of its provisions which bear directly upon the question at issue.

The contract provides that if the engineer shall direct that additional specifications or drawings or details shall be followed by the contractor, or if any question shall arise as to the quantity, quality or character of the work or materials furnished, or as to the amount to be added to or deducted from the contract price; or if any dispute, question or doubt shall arise as to the contract or its obligation at any time prior to the complete construction and equipment of the railroad, the determination of the engineer shall be binding upon the contractor and the

city so far that the contractor shall, " as the case may be, proceed or refrain from proceeding and without any delay obey the requirement of the engineer."

The contract further provided that the determination of the engineer shall be in writing and that duplicate copies thereof should be filed with the city and served on the contractor. The determination of the engineer as to work done or materials supplied was to be binding and conclusive upon the city, unless the commission should appeal within ten days after the filing of such determination, and notice of filing given to the president of the commission; and it was to be binding upon the contractor unless it should appeal within ten days after receiving a duplicate copy of the determination. The contract then proceeds to set forth the explicit provisions for the appointment of arbitrators to hear and determine appeals from the engineer's determinations, and for the procedure on such appeals.

In view of these features of the contract, it is important to note another provision under which the contractor should be entitled to additional payments for additional work by reason of additional specifications, drawings, details or other requirements, " *only upon the production of the certificate and determination of the engineer, if unappealed from,*" or, if appealed from, " *then only upon and according to the final award of the arbitrators.*"

In the effort to comply with these provisions of the contract, the relator filed claims for extra work amounting to $3,420,022.70, which are classified " A claims," amounting to $2,536,429.53, and " B claims," amounting to $833,593.17.

The appellant engineer refused to pass upon these claims on the ground that under the contract he had no right to make a determination because it would " inevitably involve the city in litigation; " and his reason seems to have been that the principal parts of these large claims for extra compensation were presented by the

relator, not on its own account, but as the representative of the tunnel company; and that the latter company, according to the appellant's view, had no right to make a claim for extra compensation because of the stipulations of a so-called supplemental contract between the relator and the tunnel company, under which it is contended the latter had foreclosed both itself and the relator from making any valid claims for extra work done by the tunnel company.

In respect of the appellant's contention regarding the legal effect of the so-called supplemental agreement between the relator and the tunnel company, we need only say that if it was the appellant's duty to pass upon the relator's claims, he was bound to perform it; and it would have been as fully performed by his refusal to recognize their validity in whole or in part as it would have been if he had certified to their validity.  If it was his duty to act upon the claims, he could not refuse, because, in his view of the law, the relator's claim could not be sustained.  That was a matter in respect of which the contract provided for a review of his decision by arbitrators, to be appointed in the method prescribed by the contract.

The writ directed to the appellant commands him "to make, file and deliver" his determination of the claims presented by the relator.  It does not direct how that determination shall be made, but simply compels action one way or the other.  In that respect it conforms to well-established rules of law which were clearly stated by Judge VANN in *People ex rel. Harris* v. *Commissioners of Land Office* (149 N. Y. 26, 30): "The primary object of the writ of mandamus is to compel action.  It neither creates, nor confers power to act, but only commands the exercise of powers already existing, when it is the duty of the person or body proceeded against to act without its agency. While it may require the performance of a purely ministerial duty in a particular manner, its command is never

given to compel the discharge of a duty involving the exercise of judgment or discretion, in any specified way, for that would substitute the judgment or discretion of the court issuing the writ for that of the person or persons against whom the writ was issued. In such cases its sole function is to set in motion, without directing the manner of performance."

In the case at bar the writ commands the appellant to perform a duty enjoined upon him by the express terms of a contract which has the force of a public statute; and being a quasi public official that is a duty, the performance of which may be enforced by mandamus unless the relator has another remedy at law. The circumstances disclosed by this record clearly indicate that the relator has no other remedy.

Counsel for the appellant contends that the refusal of the appellant to pass upon the relator's claims gives the latter a cause of action at law, and in support of his argument he cites certain cases which hold that when an architect unreasonably and in bad faith refuses a certificate, which in other circumstances would be a prerequisite to a right of action in favor of a contractor against the owner, the production of such a certificate is not necessary. (*Thomas* v. *Fleury,* 26 N. Y. 26; *Bowery National Bank* v. *Mayor, etc. of N. Y.,* 63 N. Y. 336; *Flaherty* v. *Miner,* 123 N. Y. 382; *Thomas* v. *Stewart,* 132 N. Y. 580; *MacKnight Flintic Stone Co.* v. *Mayor, etc. of N. Y.,* 160 N. Y. 72.)

The rule established by these cases is no longer open to question, but we think it has no application to the case at bar. Here the parties to the contract have undertaken to provide by arbitration, so far as possible, for the settlement of all disputes which may arise out of claims for extra compensation. This plan was doubtless suggested by the obvious fact that the character of the work, no less than the almost unlimited power of the commission and its engineer to make changes therein, rendered it necessary to submit to experts the technical engineering and other prob-

lems which would naturally enter into such controversies. The parties had the right to make such an arrangement unless it goes so far as to bring it within the condemnation of certain cases which hold that arbitration agreements are invalid if their purpose and effect is to oust the courts of jurisdiction. (*Haggart* v. *Morgan,* 5 N. Y. 422; *Seward* v. *City of Rochester,* 109 N. Y. 164, 168.) This latter question is not before us on this appeal; neither was it presented in the recent case of *People ex rel. Cranford Co.* v. *Willcox* (207 N. Y. 743), where this court approved the discussion in the opinion of the Appellate Division so far as it was germane to the question whether mandamus was the proper remedy in a case where the arbitrators had made an award to a contractor for extra compensation and the public service commission had refused to certify the voucher for the award. In that case we held that mandamus was the proper remedy, and we do not think it differs from the case at bar. In stating this conclusion it should be emphasized, however, that we do not pass upon the validity of the plan for arbitration set forth in the contract before us. That is a question not presented on this appeal, and one which should not be decided without the fullest consideration of such cases as *Prest., etc., Delaware & Hudson Canal Co.* v. *Pennsylvania Coal Co.* (50 N. Y. 250) and *Sweet* v. *Morrison* (116 N. Y. 19), where agreements for arbitration of differences arising under contracts were upheld upon the theory that the arbitrations merely qualified the claimant's right of action by providing the method under which certain facts should be determined and the amounts or values ascertained as a condition precedent to any right of action.

The order of the Appellate Division should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, HOGAN and MILLER, JJ., concur.

Order affirmed.