319 P.2d 970

B. R. GOODWIN and Verl Goodwin, co-partners, doing business under the firm name and style of Goodwin Construction Co., Plaintiffs, Respondents, and Cross-Appellants,

v.

VILLAGE OF FIRTH, Idaho, a municipal subdivision of the State of Idaho, Defendant, Appellant, and Cross-Respondent.

No. 8562.

Supreme Court of Idaho.

Nov. 20, 1957.

Rehearing Denied Jan. 16, 1958.

Holden, Holden & Kidwell, Idaho Falls, Earl W. Cory, Blackfoot, for appellant.

Anderson & Beebe, Blackfoot, for respondent.

McQUADE, Justice.

This is an action between B. R. Goodwin and Verl Goodwin, a partnership doing business as Goodwin Construction Com-

pany, referred to hereinafter as the contractor, and the Village of Firth, Idaho, referred to hereinafter as the Village.

The contractor alleges breach of a contract by which it was to install a sewer system in the Village for the sum of $37,002.55. The Village cross-complains for the cost of re-laying the sewer line.

The contract provided the contractor should visit the site of the work and fully inform himself as to existing conditions and limitations; that work should begin within three days after notification to be given by the Village, and should be completed 90 days thereafter; that the contractor should be fully responsible for any defective work or materials, notwithstanding acceptance of the work by the Village or approval of materials.

Other sections of the contract provided for compliance with specifications as to materials, and for strict conformity with plans except for authorized changes.

The contract provided also:

"The ground water table is known to rise to within a few feet of the surface during the irrigation season. In order to eliminate trench water as much as possible the Contractor must complete this job in as short a time as possible."

It further provided in article 6, section 7:

"The maximum amount of ground water infiltration that will be allowed is 1200 gallons per day per mile of pipe.

If more ground water infiltrates the sewer pipe than stated above as measured by the Engineer the Contractor shall immediately, upon receipt of notice from the Engineer that the infiltration is excessive, make the necessary repairs to reduce the infiltration to the allowable limits."

It was stipulated by the parties at the trial that ground water infiltrated into the system to a maximum of 288,000 gallons of water per mile per day.

The Village paid the contractor $32,972.89 under the contract. The contractor brought this action to recover the $4,029.66 balance claimed to be due, plus $790.24 for extra work. The Village cross-complained for $21,952.35, described as the contract cost of re-laying the sewer line to prevent infiltration of water, and for $25 per day liquidated damages for failure to complete the sewer.

During the trial, the contractor, through witnesses, contended the presence of excessive ground water was due to the inadequacy of a cold mix joint compound used, which had been listed as approved in the contract specifications. The contractor maintained that the compound is of a type which is intended to remain relatively pliable, and proved unsuitable for use where there is excessive pressure from ground water.

The Village, on the other hand, contended the compound was satisfactory, and

the contractor had chosen it in place of a hot mix compound, also specified. The Village further maintained the infiltration was due to defective workmanship in the laying of the pipe and back-filling thereon. There is no contention of fraud on the part of the Village relative to the quality of the joint compound.

The parties waived a special or a general verdict by the jury, and requested that interrogatories be submitted from which the Court would make findings of fact and conclusions of law.

The jury found the contractor had not complied with the specifications as to the manner of back-filling; that lack of compliance had contributed to excessive infiltration; that the infiltration was not caused nor contributed to by imperfect design or by insufficient specifications for the sewer; that the cold mix compound was defective, and contributed to the ground water infiltration; that the specifications for procedure and workmanship, if complied with, were sufficient to prevent excessive infiltration. In response to an interrogatory submitted by the Court on its own motion, the jury found 25 per cent of the infiltration was caused by defective workmanship, and 75 per cent by failure of the joint compound.

The Court, on the contractor's motion, set aside the finding of the jury as to percentages and held the Village was entitled to a reduction of $1,500 in the contract price, plus $100 for defective work on the "wet well" into which the sewer lines discharged. The Court then entered judgment for the contract price less these offsets. Both parties have appealed.

There are various assignments of error on behalf of each of the parties, and the Court will consider only those which are deemed material to the disposition of the appeal.

Fundamentally, the assignments of error are pointed toward the instructions of the Court and the special interrogatories submitted to the jury. An instruction on substantial performance was assigned as error, based on the proposition that the contract provision limited the ground water infiltration to 1200 gallons per mile per day.

Error is assigned to the jury's determining what percentage of the infiltration was caused by the acts of each party. Error is assigned also to the finding of the jury that the contractor contributed to the excessive infiltration of water by lack of compliance with the terms of the contract in the back-filling of trenches, tamping, and dropping of rocks on the pipe.

■ Article 6, section 7, of the contract, above quoted, is not a guarantee. This section is more aptly explained in the case of MacKnight Flintic Stone Co. v. City of New York, 160 N.Y. 72, 54 N.E. 661, 665. The work there required that a cellar be made water-tight in accordance with certain plans and specifications, and that such

construction be guaranteed absolutely water-tight and damp-proof for five years. The Court in that instance said:

"* * * It was not a guaranty of the perfection of the plan, but of the materials and workmanship, and its effect was to make the plaintiff responsible for dampness or water breakage caused by such defects only. It required supplementary performance, if necessary, upon notice from the defendant, after acceptance and payment of the contract price.

"We think the evidence presented a question of fact for the jury as to the sufficiency of the plan to produce the result desired, and as to performance of the contract when properly construed. If the work was faithfully performed according to the plan and specifications, and the failure to secure a water-tight boiler room was wholly owing to the defective design of the defendant, the plaintiff would be entitled to recover, notwithstanding the refusal of the superintendent to give the required certificate; for under those circumstances it would be his duty to give it, and a refusal to do so would be unreasonable." (Citing cases.)

The Court said also:

"* * * If there was an implied warranty of sufficiency, it was made by the party who prepared the plan and specifications, because they were his work; and, in calling for proposals to produce a specified result by following them, it may fairly be said to have warranted them adequate to produce that result. If I agree to produce a certain result according to my own plan, I impliedly warrant its sufficiency; but, if I agree to produce that result by strictly following the plan prepared by another party, he impliedly warrants its sufficiency. The responsibility rests upon the party who fathers the plan, and presents it to the other with the implied representation that it is adequate for the purpose to be accomplished. * * *"

There was no guarantee on behalf of the contractor to the Village that the system would have a maximum not to exceed 1200 gallons of water infiltration per mile per day. The contractor guaranteed the materials would be of the standard required by the specifications, and the sewer would be constructed according to the plans and specifications.

The instruction of the Court to the jury on substantial compliance is in accord with the rule laid down by this Court in the case of Puget Sound Nat. Bank of Tacoma v. C. B. Lauch Const. Co., 73 Idaho 68, 245 P.2d 800, 805, when it said:

"A contractor is required to follow the plans and specifications and when he does so, he cannot be held to guarantee that the work performed as re-

quired by his contract will be free from defects, or withstand the action of the elements, or that the completed job will accomplish the purpose intended. He is only responsible for improper workmanship or other faults, or defects resulting from his failure to perform. * * *"

It was also said in 6 A.L.R. 137, Annotation, "Wilful or intentional variation by contractor from terms of contract in regard to material or work as affecting measure of damages":

" * * * It is generally conceded that the common-law rule requiring a strict or literal performance of a contract has been greatly relaxed in actions on building contracts, so that a builder need only substantially perform his agreement in good faith in order to support a recovery. * * *"

After the sewer system was installed, there was a conference between the parties hereto relative to the excessive ground water infiltration. It would therefore appear that the Village did not expressly or impliedly accept the system. It was after installation of the system when the respondent and cross-appellant contractor first contended the mastic, which was one of those in the specifications, was defective. Article 6, sections 2 and 3, of the contract specified the materials to be used, and these were selected by the contractor as a result of the specifications.

The question as to whether this mastic was of such quality, if installed properly, as to prevent excessive ground water infiltration, was submitted to the jury on a special interrogatory. The jury made a finding that 75 per cent of the excessive infiltration was due to the use of the mastic. The Village contended the excessive infiltration was due to faulty workmanship in laying the pipe and improper back-filling thereon. The jury, upon another interrogatory, found that 25 per cent of the excessive infiltration was due to poor workmanship in the laying of the pipe and improper back-filling thereon.

After an examination of the entire record, it appears that there is competent evidence upon which the jury could base these findings. In accordance with the rule laid down by this Court:

" * * * findings of fact by the trier of the facts, if supported by competent, substantial, though conflicting, evidence, will not be disturbed on appeal." Petersen v. Holland, 79 Idaho 63, 310 P.2d 810.

See also Lesekatos v. Koehler, 79 Idaho 21, 310 P.2d 801; Jordan v. Securities Credit Corporation, 79 Idaho 284, 314 P.2d 967.

It was the responsibility of the contractor to lay the pipe according to the rules of good workmanship, and the contractor was responsible for any faults or defects resulting from failure to lay the pipe in a

.466

workmanlike manner. Puget Sound Nat. Bank v. C. B. Lauch Const. Co., supra.

█ An interrogatory was submitted by the Court to the jury for the apportionment of cause of the excessive ground water. This is not a negligence case, but is one based upon contract and failure to perform thereunder. There was considerable testimony relative to workmanship, the manner of laying the pipe, and the suitability of the mastic; those questions of fact, together with the proportionate cause of excessive ground water, were properly submitted to the jury. The Court was in error in setting aside the finding of the jury in this regard. Nuquist v. Bauscher, 71 Idaho 89 at page 94, 227 P.2d 83 at page 86.

█ The measure of damages in this instance cannot be determined on the value of the system, because under the present circumstances there would be no way of determining its value.

"* * * The measure of his damages is the reasonable cost incurred in completing the work contracted to be done, according to the terms and provisions of the contract * * *." Boise City v. National Surety Co., 30 Idaho 455, 165 P. 1131, 1132.

It is stated in 25 C.J.S. Damages § 76, p. 570:

"While in determining the measure of damages for defective performance of a contract, different elements are proper for consideration in different cases, according to the nature of the defect, as a general rule, the measure of damages is the difference in value between what is tendered as performance and what is due as performance under the contract. In case what is tendered is of no value or is unsuitable for the purpose contemplated by the contract, the measure of damages may be the amount required to remedy the defect, or a recovery of the full consideration paid may be had. Also, where a defect may readily be remedied by repairs, the reasonable cost of such repairs may afford the measure of damages. * * *"

Consequently, the apportionment of damages will be made according to the findings of fact and conclusions of law entered by the Court for the cost of repairing the system, the amount of additional work performed by the contractor, and the balance due under the contract.

The credits due the Village will be one-fourth of the amount stipulated by the parties as the cost of repairing the sewer system: to wit, $21,952.35. From this sum there should be subtracted the credits due the contractor under the contract in the sum of $4,029.66, together with $790 due the contractor for extra work and additional materials. The final result produces a balance due the Village from the contractor in the sum of $668.43.

The judgment of the Court is reversed and the cause remanded for the trial Court to enter judgment accordingly.

Costs to appellant.

KEETON, C. J., and PORTER, TAYLOR, and SMITH, JJ., concur.

On Denial of Petition for Rehearing

McQUADE, Justice.

The trial court was proceeding upon the correct theory of damages, as announced in the opinion, in submitting the interrogatory to the jury to determine the percentage of relative liability. The procedural stipulation by the parties left to the Court the making of any finding, essential to a judgment, which was not covered by the interrogatories submitted by the parties.

The contractor moved to set aside the interrogatory on the ground that the Court was without authority to submit an interrogatory without the approval of either or both parties. The Court erroneously granted such motion. Then the Court further erroneously proceeded upon what was apparently the contractor's new theory of damages: i. e., the additional cost of operating the sewer system in its defective condition

There is no merit in the contractor's arguments for rehearing.

The petition for rehearing is denied.

KEETON, C. J., and PORTER, TAYLOR, and SMITH, JJ., concur.