SANDERS COMPANY PLUMBING AND HEATING, INC., Appellant,

v.

CITY OF INDEPENDENCE, Missouri, Respondent.

No. WD 34714.

Missouri Court of Appeals, Western District.

June 18, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 30, 1985.

Application to Transfer Denied Sept. 10, 1985.

Richard W. Miller (argued), Kevin E. Glynn and Stephen J. Dennis, Kansas City, for appellant.

Joe F. Willerth (argued), George E. Kapke, Independence, for respondent.

Before LOWENSTEIN, P.J., and SOMERVILLE and NUGENT, JJ.

NUGENT, Judge.

The jury found in plaintiff's favor on two counts for misrepresentation based upon a contract to build a sewer and a change order adopted regarding that construction. The trial court granted the defendant municipality a judgment notwithstanding the verdict on both counts. We reverse, reinstate the verdict on Count II, and remand for new trial with directions on Count III.

Plaintiff, Sanders Company Plumbing and Heating, contends that the court erred in upsetting the jury's verdict in its favor and entering judgment for the defendant, City of Independence. In reviewing the court's action, we only consider the evidence and inferences supporting the verdict, disregarding defendant's evidence except as it may support the verdict. *Bayne v. Jenkins*, 593 S.W.2d 519, 521 (Mo.1980) (en banc). The following statement of facts conforms to that standard of review.

Sanders was the successful bidder on a sanitary sewer and pump station project let by the City to be built in east Independence along the Little Blue River. Engineers hired by the City prepared the plans and specifications upon which the contractors based their bids. The bidders had only thirty days to bid the project from the time they were given the city's plans. The City Engineer at the time of the project, Donald Yelton, testified that one reason the City provided the plans and specifications was to receive lower bids since the bidders would be saved the expense of drafting their own plans. Sanders relied upon the information supplied by the City and did not conduct its own tests or investigation.

The crux of Sanders' second count is that the documents provided by the City contained positive misrepresentations that the subsurface condition to be encountered in excavating the sewer pipe trench were stable, without the free-flowing ground water that the contractor actually encountered in its excavation. Sanders' evidence was that the City's plans, specifications and contract contained three positive misrepresentations of material fact.

First, attached to the documents as an appendix were the results of "auger borings" drilled in 1974 that showed the subsurface situation to be sandy and moist. The contract provides that the test hole information is not part of the contract, that the City intended no express or implied guaranty as to the accuracy of the data nor of the interpretation of it and that the bidder must draw its own conclusions as to subsurface conditions. Mr. Yelton testified that, in spite of the disclaimer, as a municipal engineer he would expect a bidder to rely upon the boring results. Geotechnical engineer Donald Duncan testified that the custom and practice in the industry is for contractors to rely upon such boring results despite a disclaimer. Mr. Duncan also testified that it would be difficult for a bidder to do its own borings on a month's notice.

The contract itself contained a drawing which is the second source of alleged misrepresentations. The drawing numbered Figure 1–2A and entitled "Embedments for

Conduits" showed the amount of excavation required and the amount and type of bedding needed for laying the pipe. The contract states that "[e]xcept where otherwise required, pipe trenches shall be excavated below the underside of the pipe, as shown on Figure 1–2A, to provide for the installation of granular embedment pipe foundation material." Finally, the contract lists the drawing in the table of contents as a specification for the contractor to follow. Mr. Yelton testified that Figure 1–2A represented the subsurface conditions as stable without the presence of free-flowing ground water.

The last relevant source of misrepresentation was that the contract had no provision for plaintiff to furnish additional bedding material. Donald Yelton testified that the absence of such a provision indicates stable subsurface conditions not requiring extra foundation materials.

The contract also provides that the contractor must obtain a change order for payment of any extra expenditures.

Sanders began work on the project in February of 1977. Initial excavation revealed unstable subsurface conditions caused by free-flowing ground water. Mr. Duncan and Mr. Yelton testified that conditions were different from those represented in the City's documents. The City's representative on the job was alerted, and the process to get a change order was begun. For reasons not revealed by the record, however, it was never obtained. Sanders had to add extra bedding, pump out the water and, consequently, its progress slowed. Sanders claims that as a result it incurred over $500,000 in additional expense.

Once the project was almost complete, an inspection pursuant to the contract revealed "exfiltration and infiltration" in a twenty-one inch clay pipe. Mr. Duncan testified that the pipe cracked because the jointing material caused excessive stress in the pipe. Sanders had installed the pipe in accordance with and to the standard required by the City's specifications.

Mr. Sanders, owner of Sanders Plumbing, testified that he was told that Sanders would be paid monthly for replacing the pipe. The city council adopted a change order that provided in pertinent part as follows:

Liability for the cause of the replacements and repairs called for by this change order has not been determined at this time and in the interest of expediting the time when the sewer may be put in service such additional work shall proceed now with a reservation of rights as hereinafter stated between the parties.

. . . .

The parties agree that the City reserves all rights in connection with its obligation to pay for such additional work and that Sanders Co. Plumbing and Heating, Inc. reserves all its rights to be paid for this additional work.

By reason of this Change Order No. 4, the contract price shall be increased by not more than $175,914.00.

All other provisions of the contract remain unchanged.

Either because of Sanders' guarantee or because of the City's belief that Sanders material or work was defective, the City never paid Sanders. The cracked pipe was discovered within the guaranty period.

Sanders filed suit in four counts, but only two counts are before us on appeal. In Count II, Sanders alleged that the City's plans, specifications and contract misrepresented the project's subsurface conditions and that it relied upon those misrepresentations and incurred additional expenses of over $500,000. The jury found in the contractor's favor on that count and awarded it $225,000. In Count III Sanders alleged that the City misrepresented that it would pay Sanders monthly for replacing the cracked twenty-one inch pipe. Again the jury found in plaintiff's favor, awarding it $175,914. The court granted defendant's motion for a judgment notwithstanding the verdicts on both counts.

■ As we have previously stated, in reviewing the court's grant of a judgment notwithstanding the verdict we only consid-

er the evidence and reasonable inferences supporting the verdict, disregarding the City's evidence except where it supports the verdict. *Bayne v. Jenkins, supra,* 593 S.W.2d at 521. The trial court cannot take the case away from the jury unless the evidence is so strongly against the plaintiff that no room remains for reasonable minds to differ on the issue; where reasonable minds can differ on a question before the jury, the court may not disturb the verdict. *Kuehle v. Patrick,* 646 S.W.2d 845, 847 (Mo.App.1982).

## I.

■ Plaintiff's first point is that the court erred in upsetting the jury's verdict on Count II. Sanders argues that the court erred in finding that the contract disclaimer pertaining to the test hole results nullified any positive misrepresentations made by the results. Sanders believes that the court was mistaken in relying on *Air Cooling & Energy, Inc. v. Midwestern Construction Co.,* 602 S.W.2d 926 (Mo.App.1980). We agree.

In *Air Cooling,* a contractor agreed with Jackson County to construct a public beach area. The city prepared the plans and specifications that included auger boring results. The contract disclaimed any representation that the results were accurate and informed the contractor to make its own tests and draw its own conclusions. The contractor hired the appellant sub-contractor to excavate trenches for the project. The sub-contractor encountered subsurface conditions different from those shown by the test holes. The sub-contractor sued the contractor and Jackson County on a warranty and misrepresentation theory. The case was tried to the court upon the pleadings and a stipulation of facts. On appeal, this court held at 929 that nothing in the evidence showed that the boring results were held out to be accurate and could be relied upon and found against the sub-contractor.

In contrast, the evidence supporting the verdict in the case at hand was that the custom and practice in the industry is for boring results to be relied upon by contractors despite disclaimers, that this reliance was invited by the city, and that one month is not sufficient time for a bidder to do its own tests. Moreover, the only representations appellant relied upon in *Air Cooling* were the disclaimed test hole results. Here two other representations are present: Figure 1–2A and the absence of a provision for extra work. The accuracy of Figure 1–2A was not disclaimed by the contract.

The holding in *Air Cooling* is limited by this court's recent decision in *Ideker, Inc. v. Missouri State Highway Commission,* 654 S.W.2d 617 (Mo.App.1983).

The rationale of *Ideker* is that the courts, motivated by concepts of fundamental fairness and seeking to avoid unjust results, have refused to be circumscribed by the harshness of the doctrine of sovereign immunity, on the one hand, and, on the other, by the principle of contract law that, if performance is possible, the contractor is not entitled to extra compensation for unforeseen difficulties it encounters in performing. To avoid this choice between a latter-day Scylla and Charybdis, Judge Somerville concluded that

[s]yllogistically, where a governmental entity makes a positive representation of a material fact relied upon by a contractor in calculating its bid, which turns out to be false or incorrect after work is commenced and occasions additional expense, the contractor finds himself in the position of one who undertakes one contract but is confronted with performance of another. The governmental entity, pragmatically speaking, gets the benefit of another contract. If performance thereof by the contractor entails more expense than was calculated in submitting its bid, the governmental entity should bear the added cost rather than the contractor because the former is the beneficiary of necessary but unbargained for work resulting from its positive representation of a material fact which turned out to be false or incorrect.

*Ideker, Inc. v. Missouri State Highway Commission, supra,* 654 S.W.2d at 621.

*Ideker* holds that a "boiler plate" provision that a contractor is fully informed regarding all conditions affecting the work to be done by reasons of its own investigations and not from any representations made by the municipality does not nullify positive representations of material fact; *but* such a disclaimer may negate *implied or suggestive* representations. *Id.* at 623. In light of *Ideker* and the following cases, we hold that a boiler plate disclaimer like that found in this case does not negate the representations made by the test results where those results are positive representations of material fact. *Bernard McMenamy Contractors, Inc. v. Missouri State Highway Commission,* 582 S.W.2d 305, 311 (Mo.App.1979); *See also, United States v. Atlantic Dredging Co.,* 253 U.S. 1, 11, 40 S.Ct. 423, 424, 64 L.Ed. 735 (1920); *United States v. Spearin,* 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L.Ed. 166 (1918); *Christie v. United States,* 237 U.S. 234, 240–42, 35 S.Ct. 565, 567–68, 59 L.Ed. 933 (1915); *Hollerbach v. United States,* 233 U.S. 165, 170–72, 34 S.Ct. 553, 556–56, 58 L.Ed. 898 (1914).

The auger boring logs state that the subsurface soil conditions are sandy and moist or very moist. The subsurface conditions were crucial to Sanders' determination of the amount of its bid and thus the log's representations were material. The results were positively stated and presented as test results. The holes were drilled in 1974, but Sanders' evidence was that the city invited contractors to rely upon its test results as it was to defendant's economic advantage that the contractors use its results because that usage enabled bidders to avoid the additional expense of new tests. Not surprisingly, the city's engineers who did the design work on the project relied upon the borings to design the sewer. The depth of the trench and the amount of fill shown on the design were based on the borings. Figure 1–2A is a part of the design, and it specified bedding and excavation conforming to the test results. It was not disclaimed. The City presented the results as positive facts and invited the plaintiff's reliance.

The City raises several other arguments supporting the court's action on Count II. Its brief appears to argue that the evidence was insufficient to submit Count II to the jury. Six elements are required for a cause of action in the nature of a breach of warranty based on a positive misrepresentation of material fact by a government entity.

(1) a positive misrepresentation by the entity

(2) of a material fact

(3) that is false or incorrect

(4) lack of knowledge by the contractor that the positive representation is false or incorrect,

(5) reliance by the contractor, and

(6) damages sustained as a direct result of the positive representation.

*Ideker, Inc. v. Missouri State Highway Commission, supra,* 654 S.W.2d at 621.

■ We have already observed that the City made three representations that the subsurface conditions were stable and unaffected by free-flowing ground water. The representations were false or incorrect because Sanders quickly encountered free-flowing ground water. The City argues that the boring results were correct when the documents were drafted and that unusually heavy rains in 1977 caused a change in conditions. But it presented no evidence of the amount of such rainfall, or that the rains occurred before the excavation or that such amount as fell was enough to raise the water table. Also, the City's Figure 1–2A was represented as showing present conditions. Finally, the City does not contest that Sanders was forced to make additional expenditures because of the actual underground conditions. The contractor's evidence pertaining to each of the six essential elements is at least sufficient to raise a question about which reasonable minds could differ and, therefore, the court erred in upsetting the verdict on Count II. *Kuehle v. Patrick, supra,* 646 S.W.2d at 847.

■ The City's next two contentions are that Sanders' recovery is precluded because it did not obtain a change order pursuant to the contract and because § 432.-070[1] does not allow a municipality to enter into oral agreements. The evidence was that the process for obtaining a change order was initiated but never completed. The contractor notified the City of the subsurface problems and the need for extra funds. Argument about absence of a change order and § 432.070 precluding recovery under Count II sidesteps the question raised by the theory of plaintiff's cause of action. Sanders seeks to recover from the City in an action for breach of the warranty inherent in the City's positive representations of material fact. The representations were that the subsurface conditions Sanders would encounter were stable and unaffected by free-flowing water. If in fact in its contract, plans and specifications the City made false or incorrect representations of material fact that Sanders relied upon and that led to extra expense to the contractor, the City has no right to demand that Sanders first obtain a change order approved by the City Council before it can recover damages for breach of warranty. Discussion of a change order in this context is totally irrelevant.

■ The City's final argument in support of the judgment on Count II is that the verdict director did not include an instruction that the contractor did not know the representations were false or incorrect. The City failed to raise that objection below or include it in its motion for judgment notwithstanding the verdict or, in the alternative, a new trial, therefore, the point is not preserved for review. Rule 70.03; *George v. Howard Construction Co.*, 604 S.W.2d 685, 695 (Mo.App.1980).

In his dissent in this case, Judge Somerville views with alarm the prospect that the rule in *Ideker* may be taken as "a panacea for every successful bidder whose costs overrun the bid price." What is and what is not a "positive representation" will always be a question to be answered by the trier of fact case-by-case. But, if those in charge of a public project wish to eliminate that question from any disputes with their contractors, they may do so in advance, first, by making very sure that any representations they make are accurate and, second, by *not making any* representations as to soil conditions and the like and by truly putting the entire burden upon the contractors to do their own pre-bidding investigations. As the evidence in this case shows, however, that approach is not without its own special costs in the time needed to conduct such inquiries and the expense of independent investigations that will certainly be reflected in the bids made on the project.

## II.

■ The jury also found in Sanders' favor on Count III for the expense of replacing the cracked clay sewer pipe. This count also was submitted on the misrepresentation theory. Sanders argues that the City positively represented that it would be paid monthly for the replacement work. Those representations were orally made by the city engineer, but the change order adopted by the City Council reserves the rights of the parties and does not provide for monthly payments. We assume that the City declined to pay the contractor on the ground that Sanders' guaranty obligated it to replace the pipe at its own expense or on the ground that the pipe cracked due to Sanders' fault.

---

**1.** Revised Statutes of Missouri, 1978. § 432.070 provides as follows:

No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

The court erred in submitting Count III on a misrepresentation theory. The parties entered into a written agreement, Change Order # 4, which was signed by Sanders. That writing does not mention monthly payments and reserves the rights of the parties. The representations relied upon by Sanders were orally made by an agent of the city, and § 432.070 precludes a municipality from being bound by oral agreements. The alleged representations are not found in the written change order. Therefore, the court erred in submitting Count III to the jury.

■■■ Although Sanders was not entitled to a verdict on a misrepresentation theory, it does have a viable contract action. The City's refusal to pay is grounded on its belief that either the contractor's fault caused the pipe to crack or that Sanders is responsible under the guaranty. Generally, when a contractor is to construct a project according to another's plans it does not insure that the plans are sufficient to obtain the result sought. The contractor should be paid when it does what it is required to do under the plans. *Sandy Hites Co. v. State Highway Commission*, 347 Mo. 954, 149 S.W.2d 828, 832 (1941); *See also North County School District R–1 v. Fidelity & Deposit Co. of Maryland*, 539 S.W.2d 469, 478 (Mo.App. 1976); and *Eveready Heating & Sheet Metal, Inc. v. D.H. Overmyer, Inc.*, 476 S.W.2d 153, 155 (Mo.App.1972). Common sense dictates that the guaranty here is not a defense since, if it were, a contractor would be penalized for doing exactly what it was required to do under another's plans. *See generally, United States v. Spearin, supra*, 248 U.S. at 136–37 (a contractor is not responsible for the consequences of defects in another's plans and specifications); *St. Joseph Hospital v. Corbetta Construction Co., Inc.*, 21 Ill.App.3d 925, 316 N.E.2d 51 (1974); and *MacKnight Flintic Stone Co. v. Mayor of New York*, 160 N.Y. 72, 54 N.E. 661 (1899).

■■■ If justice requires, this court in its discretion may remand the case to allow plaintiff to amend its pleading and for a new trial on the amended petition. *Stouse v. Stouse*, 270 S.W.2d 822, 826 (Mo.1954); and *Grindley v. Blankenship*, 671 S.W.2d 393, 396 (Mo.App.1984). Therefore, Count III is remanded for new trial contingent upon plaintiff's amending its pleading to state a viable cause of action.

Accordingly, we reverse the judgment for defendant on Count II and remand Count II to the trial court with the direction to reinstate the verdict and enter judgment for plaintiff. We reverse the judgment for defendant on Count III and remand that count to the lower court for new trial in the event plaintiff files an amended petition proper in form and substance.

LOWENSTEIN, J., concurs by way of separate opinion.

SOMERVILLE, J., dissents.

LOWENSTEIN, Judge, concurring.

I concur in the opinion of Judge Nugent. Although it is a close call on whether the city made a positive representation about subsurface water, it is unfair for the contractor to bear such a financial burden after the water was discovered. Both parties here are innocent and free of any wrong-doing or failure to make a practical investigation. To here hold the contractor responsible for the unanticipated expense results in a windfall to the public entity and a crushing burden to the contractor. To allow the contractor to recoup for the necessary extra work makes him whole and the city responsible for the work it got. The result here is in keeping with the spirit of *Ideker, Incorporated v. Missouri State Highway Commission*, 654 S.W.2d 617, 621 (Mo.App.1983), which is to require the governmental entity to bear the added cost rather than the contractor where greater expense is encountered than was calculated in the bid.

SOMERVILLE, Judge, dissenting.

I respectfully dissent from that portion of the majority opinion reversing the judg-

ment rendered by the trial court in favor of defendant and against plaintiff on count two notwithstanding the verdict.

The sanitary sewer and pump station project, for which plaintiff was the successful bidder, was located east of Independence along U.S. Highway 58 in the flood plain of the Little Blue River. Insofar as pertinent to this dissent, plaintiff, although paid the full bid price ($1,193,288.96) by defendant, brought suit against defendant claiming compensation for additional work and materials in conjunction with the project in excess of the bid price.

According to plaintiff, instability of the bottom and sides of excavations occasioned by ground water encountered after the project got underway entailed additional costs exceeding the bid price in the amount of $583,935.00. Count two was submitted to the jury on the theory that defendant made positive representations of a material fact which were false or incorrect, i.e., regarding the presence and extent of ground water, which plaintiff relied on to its detriment. See *Ideker, Inc. v. Missouri State Highway Commission,* 654 S.W.2d 617 (Mo.App.1983), and cases cited therein, for a fuller explanation of the theory of recovery purportedly relied on by plaintiff.

The jury returned a verdict in favor of plaintiff and against defendant on count two and awarded plaintiff damages in the sum and amount of $225,000.00. The trial court, pursuant to a motion for judgment notwithstanding the verdict, set aside the verdict on count two and entered judgment thereon in favor of defendant and against plaintiff.

The matters purportedly relied on by plaintiff, and acquiesced in by the majority opinion, which supposedly constituted "positive representations" of the absence of ground water when the bid was let, are threefold: (1) "auger borings" obtained and logged in April-June of *1974;* (2) a drawing identified as "Figure 1-2A" showing the depth of excavations and the amount and type of bedding upon which

pipe was to be superimposed, in conjunction with a contractual provision that *"[e]xcept where otherwise required,* proper trenches shall be excavated below the underside of the pipe, as shown on Figure 1-2A, to provide for the installation of granular imbedment pipe foundation material" (emphasis added); and (3) *absence* of a provision in the contract for the successful bidder to furnish additional bedding material.

At the risk of engaging in oversimplification, this dissent will endeavor to reduce the facts and issues to ultimate basics and dispose of them accordingly. The majority opinion holds that the trial court erred in entering judgment in favor of defendant and against plaintiff on count two, notwithstanding the verdict, because under the evidence, according to the appropriate standard of appellate review, plaintiff was entitled to an award of damages under the theory of recovery explicated in *Ideker, Inc. v. Missouri State Highway Commission,* supra. The majority opinion misreads *Ideker.* The requisite elements of such a cause of action are: "(1) A *positive representation* by a governmental entity, (2) Of *a material fact,* (3) Which *is false or incorrect,* (4) Lack of knowledge by a contractor that the *positive representation* of the material fact is false or incorrect, (5) Reliance by a contractor on the *positive representation* of a material fact made by the governmental entity, and (6) Damages sustained by a contractor as a direct result of the *positive representation* of a material fact by the governmental entity." (emphasis added) *Ideker, Inc. v. Missouri State Highway Commission,* supra, 654 S.W.2d at 621. The logic and rationale giving rise to the doctrine relied upon in *Ideker* reflects a reconciliation of conflicting principles by the courts during the embryonic stage of the doctrine. Id. 621.

The majority opinion necessarily holds that the "auger boring" logs appended to the principal contract constituted a *positive representation* of a material fact by defendant, *which was false or incorrect,* and

relied on by plaintiff. Namely, that ground water, at variance with the "auger boring" logs ostensibly relied on by plaintiff in calculating its bid, was encountered after the project got underway, thereby escalating the cost of completing the project beyond the bid price. The "auger borings" in question were obtained and logged in April-June of *1974*, and the "auger boring" logs ostensibly relied on by plaintiff were, in clear and explicit terms, correspondingly dated April-June, *1974*. The project was not advertised for bids until October 15, *1976*, at which time plaintiff first became aware of the "auger boring" logs dated April-June, *1974*. There is not one iota of evidence that the "auger boring" logs did not truly and correctly disclose subsurface soil conditions and ground water as of April-June, *1974*. As a matter of fact, plaintiff does not contend that the "auger boring" logs did not correctly portray subsurface soil conditions and ground water levels as of April-June, *1974*. Moreover, the uncontradicted evidence was that ground water levels sporadically change.

It is important to note that the principal contract, with reference to the "auger boring" logs, provided, inter alia, that "[t]here is no expressed or implied guarantee as to the accuracy of the data nor of the interpretation thereof" and each "bidder must form his own opinion of the character of the material which will be encountered from an inspection of the ground, from his own interpretation of the test hole information, and from such other investigation as he may desire." Assuming, arguendo, that the "auger boring" logs constituted a positive representation of subsurface soil conditions and ground water as of April-June, *1974*, they were *suggestive*, at best, as opposed to positive representations, of subsurface soil conditions and ground water as of October 15, *1976*. Although it has been held that disclaimer provisions similar to the one heretofore mentioned do not negate reliance on positive representations, they may preclude reliance on "implied" or "suggestive" representations. *Ideker, Inc.*

*v. Missouri State Highway Commission*, supra, 654 S.W.2d at 623. In the temporal context governing this case, the "auger boring" logs dated April-June, 1974, did not constitute a positive representation as to the level and extent of ground water at the project site when plaintiff submitted its bid and undertook to perform the contract. The "auger boring" logs, by reason of the dates on them, carried their own caveat.

With reference to "Figure 1–2A" regarding the amount of granular bedding material upon which the pipe was to be laid, the language in the accompanying contractual provision, *"[e]xcept where otherwise required"* (emphasis added), clearly discloses that the amount of granular bedding material was not an unyielding constant but was subject to variance where required.

With reference to the *absence* of a contractual provision requiring the successful bidder to furnish additional bedding material, it is patent that silence cannot be elevated to the status of a positive representation.

Whether plaintiff relied upon the "auger boring" logs dated April-June, 1974, "Figure 1–2A", and the absence of a contractual provision as to furnishing additional bedding material is not the real issue. The real issue is whether they constituted *positive representations* of a material fact which plaintiff had a right to rely upon without any attendant obligation to check existent conditions.

The theory of recovery identified with Ideker, Inc. v. v. Missouri State Highway Commission, supra, was never intended to be a panacea for every successful bidder whose costs overrun the bid price. Hence, the emphasis upon *a positive representation* of a material fact by a governmental entity which is false or incorrect and relied upon by a contractor. Otherwise, this innovative theory of recovery could never be reconciled with the well-established principle of contract law, finding clarity of expression in *United States v. Spearin*, 248 U.S. 132, 136, 39 S.Ct. 59, 61, 63 L.Ed. 166

(1918), that when one agrees to do a thing possible of performance "he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered." Extension of the theory of recovery identified with *Ideker* to the facts of this case dilutes the bidding process on public projects and makes it impossible for governmental entities to intelligently utilize and appropriate available funds. Furthermore, doing so rewards careless and indifferent bidders at the expense of both the public sector and responsible bidders.

The judgment rendered by the trial court, in favor of defendant and against plaintiff under count two of plaintiff's petition, notwithstanding the verdict, should be affirmed.

Mark V. Clark, Columbia, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P.J., and SHANGLER and DIXON, JJ.